IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

NATIONAL FEDERATION OF                )
THE BLIND OF NEBRASKA, INC.           )                8:10CV418
                                      )
        Plaintiff,                    )
                                      )
        vs.                           )        MEMORANDUM AND ORDER
                                      )
OUTLOOK NEBRASKA, INC.,               )
                                      )
        Defendant.                    )


        This matter is before the court on the defendant's motion to dismiss the complaint,

Filing No. 9, and motion for Rule 11 sanctions, Filing No. 20.  For the following reasons,

the motion to dismiss will be granted, but the motion for sanctions will be denied.

        **I.  BACKGROUND**

        On October 26, 2010, plaintiff National Federation of the Blind of Nebraska, Inc.

(NFBN) filed a complaint alleging that defendant Outlook Nebraska, Inc. (ONI) violated the

Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 *et seq*., and the

Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 701 *et seq.  See* Filing No. 1.

In summary, the complaint states as follows.

        NFBN "is a state-wide, 501c(3) nonprofit organization" that "serve[s] as a vehicle for

collective action on behalf of the blind" and  "help[s] the blind achieve first class citizenship

through full integration . . . into society."  Compl., Filing No. 1, ¶ 5.  ONI is a nonprofit

employer located in Omaha, Nebraska, that was "established to provide employment to the

blind."  *Id.* ¶¶ 12, 14.

        For approximately two years, NFBN "has been working with several blind employees

of [ONI] regarding problems in the workplace."  *Id.* ¶ 7.  NFBN's complaint does not

disclose the names of these employees "because of the potential that retaliatory action may be taken against them." *Id.* ¶ 9. The complaint does allege, however, that ONI has discriminated against these unidentified employees in the following ways: 1) ONI gave "great and unwarranted preference . . . to sighted workers in terms of supervisor positions and retention privileges"; 2) ONI has not given blind workers "the opportunity to serve as supervisors or 'shift leads' on the production floor"; 3) ONI laid off blind workers, but not sighted workers, when "contract work slowed"; 4) ONI denied requests for accommodations that would allow blind workers to operate production machinery independently; 5) ONI committed "several OSHA violations [during] the last two years," and thereafter "[a] former employee who articulated safety concerns was terminated in retaliation";[1] 6) "ONI has not regulated the temperature on the production floor adequately"; and 7) ONI gave "sighted workers . . . better pay and benefits such as credit towards seniority for previous work." *Id.* ¶¶ 14-20. NFBN claims that ONI's actions violate both the ADA and the Rehabilitation Act, *see* Compl., [Filing No. 1](#), ¶¶ 22-35, and it seeks, among other things, the following relief: a) a declaration that ONI intentionally violated the ADA and the Rehabilitation Act; b) a permanent injunction barring ONI "from unlawfully failing to provide equal employment opportunities to Plaintiff's members," "from unlawfully failing to provide reasonable accommodations to Plaintiff's members," and from "retaliating against Plaintiff's members for their protected workplace and civil rights conduct"; c) an order directing ONI "to institute and carry out policies, practices, and programs that provide equal employment

---

[1] NFBN also alleges that "other employees who have attempted to advocate for their employment rights and protections have been either terminated or have suffered other forms of adverse employment action." Compl., [Filing No. 1](#), ¶¶ 27, 34. It does not allege that these employees are members of NFBN, however.

opportunities for qualified individuals with disabilities" and to "eradicate the effects of its past and present unlawful employment practices"; d) an order directing ONI "to make and preserve all records relevant to the determination of whether unlawful employment practices have been or are being committed"; e) an award of damages to NFBN's members; and f) an award of attorney's fees and costs to NFBN and its members, Compl. at 6-7, ¶¶ (a)-(f), Filing No. 1.

On March 10, 2011, ONI moved to dismiss the complaint with prejudice. Filing No. 9. Citing Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 17(a)(1), ONI argues that this court lacks subject matter jurisdiction over NFBN's claims, that the complaint fails to state a claim upon which relief can be granted, and that NFBN "is not the real party in interest under the claims being asserted."  Mot. to Dismiss at 1, Filing No. 9.

On May 18, 2011, after NFBN filed its response to ONI's motion to dismiss the complaint, ONI filed a motion for Rule 11 sanctions against NFBN and its counsel.  Filing No. 20.  ONI argues that sanctions are warranted because NFBN's complaint is frivolous, NFBN's attorney failed to conduct a reasonable inquiry to determine whether the plaintiff's claims are warranted under existing law, and NFBN's claims duplicate individual claims that are being pursued by OMI's employees.  *See generally id.*

## II. DISCUSSION OF THE DEFENDANT'S MOTION TO DISMISS

### A. Law

A plaintiff's standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit." *McClain v. American Economy Ins. Co.*, 424 F.3d 728, 731 (8th Cir. 2005) (quoting *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000)).  The concept of standing is rooted in Article III, § 2, of the United

3

States Constitution, "which limits the subject matter jurisdiction of federal courts to actual cases and controversies." *Id.* In other words, if standing is lacking, then this court has no subject matter jurisdiction. *E.g.*, *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 980 (8th Cir. 2009) (quoting *Young America Corp. v. Affiliated Computer Services (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005)). *See also* *Faibisch v. University of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002) ("[A] standing argument implicates Rule 12(b)(1).").

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge either the factual truthfulness or the facial sufficiency of the plaintiff's jurisdictional allegations. *See, e.g.*, *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 520-21 (8th Cir. 2007) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). In a facial attack, the standard of review is the same standard that applies to motions brought pursuant to Federal Rule of Civil Procedure 12(b)(6): the court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and it must determine whether the plaintiff has asserted "facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *Stalley*, 509 F.3d at 521 (citing, *inter alia*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)).

In contrast, "[w]hen a district court engages in a factual review, it inquires into and resolves factual disputes." *Faibisch*, 304 F.3d at 801. When resolving factual disputes, "the court may receive competent evidence such as affidavits, deposition testimony, and the like." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Furthermore, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

claims." *Id.* at 593 n.1 (quoting *Mortensen v. First Federal Savings and Loan Association, 549 F.2d 884, 891 (3d Cir. 1977)*).

In the instant case, ONI's motion to dismiss does not raise any factual disputes; ONI argues that the complaint is deficient on its face.  Also, although NFBN has submitted two declarations in opposition to ONI's motion, *see* Filing No. 17, the court finds that it need not make any factual findings to resolve the motion.  ONI's motion to dismiss will therefore be analyzed as a facial challenge.

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *McClain*, 424 F.3d at 731 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). "The party invoking federal jurisdiction"–here, the plaintiff–"bears the burden of establishing these elements." *Young America Corp.*, 424 F.3d at 843 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Standing "often turns on the nature and source of the claim asserted" by the party seeking to invoke the court's jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 500 (1975).  In other words, "[t]he actual or threatened injury required by [Article] III may exist solely by virtue of the statutes creating legal rights, the invasion of which creates standing." *Id.* (citations and internal quotation marks omitted).  In such a case, the question of standing depends upon "whether the constitutional or statutory provision on which the claim rests

properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* (footnote omitted).

"In addition to satisfying Article III standing requirements, litigants must stay within 'prudential limitations on the exercise of federal-court jurisdiction." *Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 2005) (quoting *Warth*, 422 U.S. at 498). "One such limitation is a rule that parties 'generally must assert [their] own legal rights and interests, and cannot rest [their] claim[s] to relief on the rights or interests of third parties." *Id.* (quoting *Warth*, 422 U.S. at 499). This rule is not absolute, however. *See, e.g.*, *Warth*, 422 U.S. at 500-501; *Kowalski v. Tesmer*, 543 U.S. 125, 129-130 (2004). For example, under certain circumstances an organization may be able to assert the rights of its members under the doctrine of associational standing. *See, e.g., Warth*, 422 U.S. at 511.

The Supreme Court has outlined two general ways in which an association can establish standing. First, "an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth*, 422 U.S. at 511. "Moreover, in attempting to secure relief from injury to itself the association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties." *Id.*

Alternately, under the doctrine of associational standing, an organization "may have standing solely as the representative of its members" even if it has not suffered an injury itself. *Warth*, 422 U.S. at 511. To establish associational standing, an association "must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Id.* "So long as this can be established, and so

6

long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction."   *Id.*   *See also Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977) ("[W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").

### B.   Analysis

OMI argues that the complaint must be dismissed because NFBN lacks standing. Def.'s Br. at 2-4, Filing No. 10.   The court agrees.

### 1.   NFBN Lacks Standing to Sue in Its Own Right

First, NFBN has not alleged facts showing plausibly that it has standing to sue in its own right.   As noted above, in order to demonstrate that it has standing to sue in its own right, NFBN must first establish that it suffered an injury in fact.   To do so, NFBN must show that it suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."   *Young America Corp. v. Affiliated Computer Services (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005). Although "general factual allegations of injury resulting from the defendant's conduct may suffice to establish standing," *id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)), the court must dismiss the complaint "[i]f the plaintiff offers no factual allegations, specific or general, demonstrating an injury in fact."   *Id.*   In this case, NFBN's complaint

does not allege facts showing that NFBN *itself* suffered an invasion of a legally protected interest.  Instead, the complaint alleges that certain unidentified persons who may be members of NFBN have suffered employment discrimination in violation of the ADA and the Rehabilitation Act.  *See generally* Compl., Filing No. 1.  This is insufficient to establish NFBN's standing to sue in its own right.

In opposition to ONI's motion, NFBN submits that it has standing to sue in its own right because ONI's actions caused NFBN "to expend organizational resources in vindicating the rights of blind workers" and frustrated NFBN's "organizational mission and purpose."  Pl.'s Response Br. at 7, Filing No. 16.  In support of this claim, NFBN cites the declaration of Amy Buresh, President of NFBN.  *Id.* (citing Pl.'s Index, Ex. 2, Buresh Decl., Filing No. 17-2).  Buresh states that "ONI's discriminatory treatment of several blind/visually impaired employees frustrates [NFBN's] mission to achieve discrimination free working conditions for the blind of our state," and that NFBN "continue[s] to spend considerable human and financial resources on attempting to bring about needed reform at ONI."  Buresh Decl. ¶ 10.

It is true that "[s]tanding may be found when there is a concrete and demonstrable injury to an organization's activities which drains its resources and is more than simply a setback to its abstract social interests."  *National Federation of the Blind of Missouri v. Cross*, 184 F.3d 973, 979 (8th Cir. 1999).  As noted above, however, the complaint must be dismissed if there are no factual allegations demonstrating that the plaintiff has suffered an injury in fact.  *Young America Corp.*, 424 F.3d at 843.   NFBN's complaint does not

allege that ONI's actions caused any injury to *NFBN's* activities,[2] and it does not include a prayer for relief from any such injuries.  Thus, even if the court were to assume that Buresh's declaration includes facts that would be sufficient to support NFBN's standing to sue for organizational injuries,[3] these facts are nowhere to be found in the complaint.  The complaint simply does not include a claim for organizational injuries

NFBN also argues that it has standing to sue in its own right because the ADA and Rehabilitation Act "are not solely targeted at individuals."  Pl.'s Response Br. at 5, Filing No. 16.  In support of its argument, NFBN submits that the ADA is a "broad remedial statute" that "should be construed broadly to effectuate its purposes," and the Rehabilitation Act has a "broad sweep" that is not limited "to purely individual relief."  *Id.* at 5-6 (citations omitted).  NFBN also submits that because Title I of the ADA provides "a broad swath of remedies and enforcement mechanisms . . . to a variety of parties including individuals, the Attorney General, and the Equal Employment Opportunities Commission," it is only logical "that a corporate entity . . . would have the same power to enforce the ADA as the Attorney General of the United States."  *Id.* at 6-7 (citing 42 U.S.C. § 12117).

---

[2] The complaint merely alleges that "[f]or nearly two years, [NFBN] has been working with several blind employees of [ONI] regarding problems in the workplace."  Compl. ¶ 7, Filing No. 1.

[3] The court notes that Buresh's declaration does not identify, quantify, or describe with any specificity the resources that she claims were expended by NFBN due to ONI's alleged actions. *Cf. Arkansas ACORN Fair Housing, Inc. v. Greystone Development, Ltd. Co.*, 160 F.3d 433, 434-35 (8th Cir. 1998) (discussing facts needed at the summary judgment stage to establish an organization's standing to sue in its own right). Moreover, "[a]n organization cannot . . . manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit." *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990). "Were the rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no real limitation." *Id.*  Buresh's affidavit indicates that NFBN has expended resources to combat discrimination at ONI.  It is doubtful, however, that this evidence would be sufficient to establish standing in the context of a factual attack upon jurisdiction or a summary judgment motion. *See Spann*, 899 F.2d at 27 (explaining that an organization can establish an Article III injury "if it alleges that purportedly illegal action increases the resources the group must devote *to programs independent of its suit challenging the action*") (emphasis added).

Courts have held that corporate entities do have standing to sue in their own right under the ADA and Rehabilitation Act.  *See, e.g., Addiction Specialists, Inc. v. Township of Hamption*, 411 F.3d 399, 405-07 (3d Cir. 2005) (holding that a corporation has standing to seek damages on its own behalf under the ADA and Rehabilitation Act).  As explained above, however, the complaint lacks allegations stating that NFBN is suing under these statutes in its own right.  NFBN cannot rely solely on the breadth of the relevant statutes to establish its standing; the complaint must contain factual allegations of injury to NFBN. *Young America Corp.*, 424 F.3d at 843.

In summary, because the complaint does not allege that NFBN suffered an injury in fact, NFBN has not shown that it has standing to sue in its own right.[4]

## 2.  NFBN Lacks Associational Standing

As noted previously, "an association has standing to bring suit on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).  ONI argues that NFBN can satisfy neither the first nor the third of these requirements.  Def.'s Reply Br. at 2-6, Filing No. 18.  The court finds that the complaint's allegations establish that NFBN's members would have standing to sue under the ADA and Rehabilitation Act in their own right, but they fail to establish that neither the

---

[4] Although NFBN's failure to allege that it suffered an injury in fact renders it unnecessary for the court to consider whether NFBN has established the remaining standing requirements, the court notes that the complaint also lacks allegations showing that NFBN has suffered an injury that "is fairly traceable to the challenged action of the defendant" or "is likely . . . [to] be redressed by a favorable decision."  *McClain*, 424 F.3d at 731.

claims asserted nor the relief requested requires the participation of NFBN's individual members.

### a.   NFBN's members would have standing to sue in their own right

In support of its motion to dismiss, ONI argues that the complaint's allegations fail to establish the first element of associational standing, *i.e.*, that NFBN's individual members would have standing to sue in their own right.  Def.'s Reply Br. at 3, Filing No. 18.  First, citing *Missouri Protection and Advocacy Services, Inc. v. Carnahan*, 499 F.3d 803 (8th Cir. 2007), ONI submits that the complaint is deficient because it does not properly allege that the employees who allegedly suffered employment discrimination at ONI are "members" of NFBN.  Def.'s Reply Br. at 3-4, Filing No. 18.  Although the question is close, the court is not persuaded that the complaint fails to allege "membership" adequately.

In *Carnahan*, the Eighth Circuit drew a distinction between an organization's "members" and mere "constituents."  499 F.3d at 810.  The court explained that the indicia of membership in an organization include the ability to elect the organization's members, the ability to serve in the organization, and the obligation to finance the organization's activities "through assessments levied upon them."  *Id.* (quoting *Hunt*, 432 U.S. at 344-45).  Constituents, in contrast, lack these relationships with the organization.  Indeed, though the organization may act on their behalf, constituents may be "unable to participate in and guide the organization's efforts."  *Id.* at 809-10 (quoting *Ass'n for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994)).  The court held that mere constituency is insufficient to establish an organization's associational standing, and after reviewing the case record, it found that

it was "fair to infer" that the relevant persons were simply constituents of the association. *Id.* at 810. As a result, it concluded that the plaintiff lacked associational standing.

Here, the complaint alleges that ONI discriminated against its "members" and "other employees" in violation of the ADA and Rehabilitation Act. *See, e.g.*, Compl. ¶¶ 21-35, Filing No. 1. It alleges that NFBN serves "as a vehicle for collective action on behalf of the blind," "help[s] the blind achieve first class citizenship through full integration of the blind into society," "assist[s] the blind in achieving meaningful and equal employment," and advocates "on behalf of blind workers." *See id.* ¶¶ 5-6. Importantly, the complaint also alleges that NFBN "has been working with several blind employees of [ONI] regarding problems in the workplace" for nearly two years. *Id.* ¶ 7. Although the complaint does not specifically allege whether NFBN's members possess *all* of the indicia of "membership" described in *Carnahan*, it does support a reasonable inference that NFBN's members have an ability to "participate in and guide [NFBN's] efforts." 499 F.3d at 810. The court finds that the complaint's general factual allegations are sufficient, at this stage of the proceeding, to establish the "membership" component of associational standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'").

ONI also argues that NFBN has failed to establish the first element of associational standing because it has not identified any members with standing to sue in their own right. More specifically, ONI claims that because NFBN has concealed the identities of its alleged members, this court simply cannot determine whether any members have standing to sue in their own right. Def.'s Reply Br. at 4, Filing No. 18. Courts have held, however, that the

requirements of associational standing "allow[] for the member on whose behalf the suit is filed to remain unnamed by the organization." *Disability Rights Wisconsin, Inc. v. Walworth County Board of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008) (citing *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999)).   ONI cites no authorities that reject this holding.[5]  Moreover, although NFBN's members are unnamed, the complaint states clearly that NFBN is suing "on behalf of specific individuals who themselves have allegedly suffered concrete harm as a result of the defendant's actions." *Carnahan*, 499 F.3d at 809 (quoting *Tennessee Protection & Advocacy, Inc. v. Board of Education of Putnam County, Tennessee*, 24 F. Supp. 2d 808, 815-16 (M.D. Tenn. 1998)).   The complaint will not be dismissed because it fails to identify those members by name.

In summary, the court finds that the complaint's allegations are sufficient to establish that one or more of NFBN's members have standing to sue in their own right.

> **b.   The claims asserted by NFBN require the participation of its members**

ONI argues that NFBN has failed to show that "neither the claim[s] asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343 (1977).  After careful consideration, the court finds that ONI is correct.

---

[5] At a later stage of a case, however, at least one court has required an associational plaintiff to identify a member with standing to sue.  *See National Alliance for the Mentally Ill, St. Johns Inc. v. Board of County Commissioners of St. Johns County*, 376 F.3d 1292, 1296 (11th Cir. 2004).

Neither party has referred the court to controlling authority that addresses this "unnamed member" issue.

NFBN concedes that the complaint, in its current form, cannot fully satisfy the third element of associational standing. *See* Pl.'s Response Br. at 4-5, Filing No. 16. More specifically, NFBN states,

> With respect to element three, nothing about the claims asserted or relief requested requires the participation of individual members of [NFBN] in this Action *as it will be amended*. The injunction requested by [NFBN] would be uniform to all blind workers and potential workers at ONI. Therefore, individual members of [NFBN] are not necessary to realize the terms of the requested injunctive relief.
>
> It is true that the original Complaint seeks monetary relief of all types including lost wages[,] etc. However, *Plaintiff will amend the original [C]omplaint to eliminate all requests for specific monetary relief potentially tied to specific workers who would necessarily have to be part of this Action*. Alternatively, this Court could simply strike Paragraph 21 of Plaintiff's Complaint and Subparagraph E of Plaintiff's Prayer for Relief and any need to plead specific, individual damages will be eliminated. All other relief sought and prayed for in the Complaint does not require the individual members of [NFBN to] participate in this Action. The relief requested would apply to all blind/visually impaired employees or potential employees. Consequently, NFBN[] satisfies element three of the [*Hunt*] test.

Pl.'s Response Br. at 4-5, Filing No. 16 (emphasis added).

In short, NFBN admits that it lacks standing to seek damages on behalf of its members, and it proposes two ways in which the defect in its complaint may be cured. First, NFBN declares that it will amend its complaint to remove its requests for damages. At this stage of the proceeding, however, NBFN cannot amend its complaint as a matter of course; instead, it must first obtain either written consent from ONI or leave from this court. *See* Fed. R. Civ. P. 15(a)(1)-(2). There is no indication that NFBN has obtained ONI's consent to file an amended complaint, and this court has not granted NFBN leave to amend. Furthermore, although "[t]he court should freely give leave [to amend the complaint] when justice so requires," Fed. R. Civ. P. 15(a)(2), the plaintiff must first file a

14

motion for leave to amend that is accompanied by a copy of the proposed amended complaint, *In re 2007 Novastar Financial Inc., Securities Litigation*, 579 F.3d 878, 884-85 (8th Cir. 2009).  *See also* NECivR 15.1.  Merely including a request for leave to amend in a response brief, as NFBN has done here, is insufficient.  *See In re Novastar Financial Inc., Securities Litigation*, 579 F.3d at 884-885. Second, NFBN suggests that this court "could simply strike" certain language from the complaint to render it viable.  This suggestion amounts to a request that this court ignore the requirements of Federal Rule of Civil Procedure 15(a) and Nebraska Civil Rule 15.1 and amend the complaint for the plaintiff.  The court will not do so.[6]

In any event, by its own admission NFBN lacks standing to bring claims for monetary damages on behalf of its members, and therefore this court lacks jurisdiction to consider them.  The claims for damages must be dismissed.

It remains to be determined whether NFBN has standing to seek prospective relief on behalf of its members.  *Cf. Davis v. Federal Election Commission*, 554 U.S. 724, 734 (2008) (noting that a plaintiff must demonstrate standing for each separate claim of relief). NFBN maintains that although it cannot seek monetary damages "tied to specific workers," it does have standing to seek an injunction on behalf of its members without their participation in the case.  Pl.'s Response Br. at 4, Filing No. 16.  NFBN's arguments are not persuasive.

First, NFBN argues that the third requirement of associational standing might not apply to its claims for prospective relief.  It is true that "[t]he third requirement [of

---

[6] It merits mention that NFBN declared its intention to amend the complaint in a brief filed on March 31, 2011.  As of today's date, NFBN has not filed a motion to amend.

associational standing] is a prudential limitation on standing that may be abrogated by Congress, not an element of the case or controversy limitation on federal judicial power contained in Article III of the Constitution." *Missouri Protection and Advocacy Services, Inc. v. Carnahan*, 499 F.3d 803, 809-10 (8th Cir. 2007) (citing *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557 (1996)).  The fact that this requirement rests "on less than constitutional necessity is not . . . to rob it of its value." *United Food*, 517 U.S. at 556.  It simply means that Congress can eliminate the requirement without running afoul of Article III of the Constitution.  *See id.* at 557-58. Prudential standing doctrine applies, however, "unless it is expressly negated" by Congress.  *Bennett v. Spear*, 520 U.S. 154, 163 (1997).  NFBN's argument raises the question of whether Congress has expressly negated the prudential standing rules for claims such as the instant one.

Although NFBN argues that "courts have *speculated* that Titles I and II of the ADA may not be . . . limited" by prudential limits on organizational standing, it also concedes that "there appears to be no case directly on point."  Pl.'s Response Br. at 5, Filing No. 23 (citing *Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J. 2003)) (emphasis added).[7] Indeed, the court has been unable to locate any authority suggesting that the prudential standing rules do not apply in cases such as this one.  In *Clark v. McDonald's Corporation*, which is cited in NFBN's brief, the court noted in dicta[8] that two courts of appeals have found "a congressional intention [in the ADA and Rehabilitation Act] to define standing to

---

[7] The court notes in passing that NFBN raised this argument in response to ONI's motion for sanctions, not in response to ONI's motion to dismiss.

[8] In *Clark*, the court held that the associational plaintiff *was* required to satisfy prudential standing requirements in order to bring a claim under Title III of the ADA.  *See* 213 F.R.D. at 210-11.

bring a private action as broadly as is permitted by Article III of the Constitution, thus removing prudential barriers to standing." 213 F.R.D. at 209.  In the first of these two cases, the Second Circuit concluded that because the enforcement provision of Title II of the ADA "extends relief to 'any person alleging discrimination on the basis of disability,'" and because "the Rehabilitation Act extends its remedies to 'any person aggrieved' by the discrimination of a person on the basis of his or her disability," prudential limits on standing did not bar a drug rehabilitation center from challenging a zoning decision that blocked the center's effort to relocate its facility.  *Innovative Health Systems, Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997), *superseded on other grounds*, *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001) (quoting 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2)).  In the second case, the Sixth Circuit reached the same conclusion.  *See MX Group, Inc. v. City of Convington*, 293 F.3d 326 (6th Cir. 2002).  In both cases, however, the plaintiffs were not suing solely on behalf of their members; rather, they suffered injuries themselves (in the form of denied zoning permits) due to their association with disabled persons.  *See MX Group, Inc.*, 293 F.3d at 335.[9]  Thus, these cases are readily distinguishable from the instant one, and they do not support NFBN's argument that it has standing under the ADA and Rehabilitation Act to litigate individuals' employment discrimination claims without their participation.

The court has reviewed the relevant enforcement provisions in the ADA and the Rehabilitation Act, and it agrees with NFBN that these provisions are broadly worded.  *See*

---

[9] Other courts have dealt with similar zoning-based claims and have reached similar conclusions. *See, e.g.*, *Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399 (3d Cir. 2005); *Discovery House, Inc. v. Consolidated City of Indianapolis*, 319 F.3d 277, 279 (7th Cir. 2003).

42 U.S.C. § 12117 (extending the ADA's remedies "to any person alleging discrimination on the basis of disability"); 29 U.S.C. § 794a(a)(2) (extending remedies "to any person aggrieved by any act or failure to act by any recipient of Federal Assistance or Federal provider of such assistance under section 794 of this title"). Clearly, entities such as NFBN do have standing to bring certain types of claims under these statutes (or statutes with analogous enforcement provisions). *See, e.g.*, *Innovative Health Systems, Inc.*, 117 F.3d at 47; *Addiction Specialists, Inc.*, 411 F.3d at 399; *MX Group, Inc.*, 293 F.3d at 326; *Discovery House, Inc.*, 319 F.3d at 279. However, standing depends on the specific nature of the relief sought, *Warth v. Seldin*, 422 U.S. 490, 515 (1975), and the court is not persuaded that the statutes expressly negate prudential standing limitations in cases such as this one. To hold otherwise would grant an association standing to litigate an individual member's personal employment discrimination claim without his participation, no matter how important his participation might be. This, in turn, could very well frustrate his ability to invoke (or forego) the rights afforded to individuals with disabilities under the ADA and Rehabilitation Act. Without express language indicating that Congress intended such a result, and given the lack of authority supporting NFBN's position, the court declines to relieve NFBN of the obligation to satisfy prudential standing requirements.

The court has also studied the Eighth Circuit's opinion in *Missouri Protection and Advocacy Services, Inc. v. Carnahan*, and although it does not speak directly to the issue at hand, it does merit brief discussion. In *Carnahan*, the Eighth Circuit did not specifically address whether Congress, in enacting Title I of the ADA and the Rehabilitation Act, abrogated prudential standing requirements. *See* 499 F.3d at 812. *See also id.* at 810 n.7 (holding that Congress did not abrogate prudential standing requirements when it enacted

the Protection and Advocacy for Mentally Ill Individuals Act of 1986, 42 U.S.C. § 10801 *et seq.*).  The court did hold, however, that the plaintiff lacked standing to sue under Title II of the ADA and the Rehabilitation Act without the full participation of certain individual members.  *See* 499 F.3d at 812.  This holding seems to embrace the conclusion that the prudential standing requirements were applicable in that case and had not been abrogated by Congress.

In summary, it appears that no court has found that the prudential limits on associational standing do not apply when an association seeks to press individual claims of employment discrimination on behalf of its members without those individuals' participation.  NFBN admits as much.  The court finds, therefore, that NFBN must satisfy *Hunt*'s third requirement in order to bring disability-based employment discrimination claims on behalf of its members, regardless of the specific type of relief sought.

Having found that the third requirement for associational standing applies to NFBN's claims for prospective relief, the court must now determine whether NFBN has satisfied that requirement.  NFBN argues that because the injunction it seeks "would be uniform to all blind workers and potential workers at ONI," this court can order injunctive relief without the participation of NFBN's individual members.  Pl.'s Response Br. at 4, Filing No. 16.  The court will assume, for purposes of argument, that the prospective relief sought by NFBN would apply broadly and uniformly.  *See Warth*, 422 U.S. at 515 (noting that it is reasonable to suppose that an award of prospective relief will "inure to the benefit of those members of the association actually injured").  NFBN cannot satisfy its burden, however, merely by showing that its members' individual participation is not necessary for them to realize the benefits of the remedy sought.  In addition, NFBN must establish that "the fact

. . . of injury" does not "require individualized proof.  *Id.* at 515-16.  *See also Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977) (holding that associational standing requires a showing that "*neither the claim asserted nor the relief requested* requires the participation of individual members in the lawsuit" (emphasis added)).  By way of example, a complaint that raises "a pure question of law" might be resolved without considering the unique circumstances of an association's individual members.  *See International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Brock*, 477 U.S. 274, 287 (1986).  But the instant complaint does not raise such a question.  In order to obtain the prospective relief it seeks in this case, NFBN will have to show that ONI discriminated against certain disabled employees in violation of the ADA or the Rehabilitation Act.  This will require individualized proof that a particular employee experienced one or more of the varieties of employment discrimination alleged in the complaint.  NFBN has not argued–much less established– that it can bring forth this proof without the participation of any individual employee.

Because NFBN has failed to show that neither the claims asserted nor the relief requested in the complaint require the participation of NFBN's individual members, NFBN lacks associational standing to bring this action.  ONI's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) must therefore be granted.[10]

ONI asks that the complaint be dismissed with prejudice, *see* Mot. to Dismiss at 1, Filing No. 9, but a dismissal with prejudice is not appropriate in this case, *see, e.g., County*

---

[10] In view of this conclusion, the court finds that it is unnecessary to discuss whether dismissal is also warranted pursuant to Rules 12(b)(6) or for a violation of Rule 17(a).  The court notes in passing that ONI's arguments in favor of dismissal under these rules mirrors its argument that NFBN lacks standing to sue in its own right.  *See* Def.'s Br. at 5-7, Filing No. 10.

*of Mille Lacs v. Benjamin*, 361 F.3d 460, 464-65 (8th Cir. 2004) (explaining that a district court is generally prohibited from dismissing a case with prejudice after concluding that subject matter jurisdiction is lacking).  The complaint will be dismissed without prejudice.

### III.  DISCUSSION OF THE DEFENDANT'S MOTION FOR SANCTIONS

#### A.  Law

In pertinent part, Federal Rule of Civil Procedure 11(b) states,

> By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . . .
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. . . .

Fed. R. Civ. P. 11(b)(2).  After a court determines that Rule 11(b) has been violated, Rule 11(c) allows it to "impose an appropriate sanction" on the attorney or party responsible for the violation.  Fed. R. Civ. P. 11(c)(1).  The sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," and it "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).  However, a monetary sanction cannot be imposed against a represented party for violating of Rule 11(b)(2).  *See* Fed. R. Civ. P. 11(c)(5)(A).

"Rule 11 requires that an attorney conduct a reasonable inquiry of the factual and legal basis for a claim before filing."  *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003).

"To constitute a reasonable inquiry, the prefiling investigation must uncover a factual basis for the plaintiff's allegations, as well as a legal basis."   *Id.* (citing *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991)).

### B.  Analysis

ONI argues that monetary sanctions should be imposed on NFBN and its attorney "for filing a frivolous Complaint against ONI."   Mot. for Sanctions at 1, Filing No. 20. Because ONI's motion is based on Rule 11(b)(2), *see* Mot. for Sanctions at 2, Filing No. 20, monetary sanctions cannot be awarded against NFBN itself, *see* Fed. R. Civ. P. 11(c)(5)(A).   It is a close question, however, whether monetary sanctions should be imposed on NFBN's counsel.

ONI argues that the complaint is frivolous because NFBN clearly lacks standing to bring the claims set forth therein.  Mot. for Sanctions at 2, 4, Filing No. 20.  This court has concluded that NFBN failed to establish associational standing, but it does not necessarily follow that NFBN's position was so baseless as to warrant Rule 11 sanctions.  Though NFBN was unable to identify any authority holding that a plaintiff can establish associational standing to bring individual employment discrimination claims on behalf of its members without the members' participation, ONI did not identify any authority holding specifically that associational standing cannot be established in cases such as this one. Also, the fact that some courts have declined to apply prudential rules of standing to certain types of claims brought under the Rehabilitation Act or the ADA provides a reasonable foundation for NFBN's standing argument.  In short, the plaintiff's standing

argument was neither contrary to established law or unsupported by a reasonable argument for the development of new law.[11]

ONI also argues that sanctions must be imposed because NFBN's counsel failed to conduct a reasonable inquiry to determine whether the complaint was warranted under applicable law. Mot. for Sanctions at 1, 4, Filing No. 20. This argument is not without foundation. In response to ONI's motion for sanctions, NFBN's counsel submitted a declaration stating,

> 3.  This case originated with the Equal Employment Opportunities Commission when [NFBN] filed a charge of employment discrimination against Defendant.
>
> 4.  EEOC accepted the case and investigated same. EEOC never dismissed same for lack of standing or because [NFBN] was an improper party.
>
> 5.  *This fact alone led me to believe* that [NFBN] possessed proper standing.
>
> 6.  Upon filing this matter, I was generally aware that various ADA suits have been successfully brought based on organizational plaintiffs bringing them. I certainly had not seen any case indicating that such actions were absolutely barred.
>
> 7.  *After Defendant's motion to dismiss, I have conducted several hours of legal research* indicating that a case brought under Title I of the ADA by an organizational plaintiff is certainly cognizable and not automatically barred. However, I have not located any case directly on point.

---

[11] ONI argues that NFNB's willingness to withdraw its claims for damages demonstrates that the complaint was frivolous and that counsel's prefiling investigation was inadequate. Mot. for Sanctions at 3. Though NFBN's counsel did not press the point, there is authority for the proposition that an association may collect damages on behalf of its members when Congress has expressly abrogated prudential standing barriers. *See United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544 (1996). The court is not persuaded that counsel's decision to concede the damages claims necessarily establishes that they were frivolous when filed.

Pl.'s Index, Ex. 1, Labarre Decl. ¶¶ 3-7, Filing No. 24-1.  The highlighted language, taken in context, suggests that counsel did not conduct a reasonable inquiry into the question of standing until after ONI filed its motion to dismiss.  This, in turn, could support a finding that Rule 11 has been violated. *Coonts v. Potts*, 316 F.3d at 753.

As noted previously, "[t]o constitute a reasonable inquiry, the prefiling investigation must uncover a . . . legal basis" for the plaintiff's claims. *Id.*  Counsel states that upon filing the complaint, he was generally aware that organizations had successfully established associational standing to bring various ADA claims.  His research, though conducted belatedly, confirmed his general understanding and uncovered no case holding that an action such as this one would certainly be dismissed for lack of standing.  Although counsel ought to have thoroughly investigated the question of standing before filing the complaint, the court cannot say that it was unreasonable for counsel to make the filing based on his knowledge of the law at the time–which appears to have been accurate.

Finally, ONI argues that sanctions are warranted because  NFBN filed its complaint for an improper purpose.  More specifically, it argues that NFBN is using "the legal system as a tool to further its broader organizational interests rather than to assist its individual members in protecting [their] legal rights," adding that NFBN's claims duplicate other claims that have been filed by individual employees at ONI.  Mot. for Sanctions at 3-4, Filing No. 20.  Once again, there is evidence supporting ONI's arguments.

First,  Amy Buresh submitted a declaration stating that this lawsuit is consistent with NFBN's organizational interests.  Pl.'s Index, Ex. 2, Buresh Decl., Filing No. 17-2. Evidence such as this is necessary to establish associational standing, however, and it can also support a finding that an organization has standing to sue in its own right.  See *Hunt,*

24

432 U.S. at 343; Cross, 184 F.3d 973, 979 (8th Cir. 1999). Buresh's declaration–and the record in general–does not establish that NFBN sought to further its organizational interests at the expense of its members.

Second, NFBN's counsel submitted a declaration stating,

Glen Moss, one of [NFBN's] members and also my client, has filed an action in this Court, Case No. 8:11-cv-00019-JFB-TDT, based on many of the same unfair employment practices complained of in this Action.   Other administrative complaints from current and former blind and visually impaired employees of Defendant [ONI] are making their way through the administrative process of the Nebraska Equal Opportunity Commission and the federal Equal Employment Opportunity Commission.

Pl.'s Index, Ex. 1, LaBarre Decl. ¶ 3, Filing No. 17-1.   ONI argues that this statement demonstrates that NFBN filed a redundant action that seeks to duplicate the claims that association members are in the process of bringing on their own behalf.   This argument assumes, however, that the unnamed employees whose claims are described in the complaint include Moss and the other employees whose claims are "making their way through the administrative process."   ONI may well be correct–and if so, NFBN's actions are quite troubling.   The court does not have information before it now, however, that could support a finding that NFBN's action duplicates others.

Given the totality of the circumstances, the court is not persuaded that NFBN's counsel has violated Rule 11(a)(2).   Counsel's prefiling investigation of the standing issue was extremely limited, and the standing issue is quite complex.   Nevertheless, counsel's understanding of the law at the time of the filing of the complaint was accurate, and it was not unreasonable for counsel to attempt to persuade this court to set aside the prudential barriers to standing (as other courts have done, albeit in significantly different cases).

25

The complaint will be dismissed, but the court will not impose sanctions upon the plaintiff's attorney under Rule 11.  Accordingly,

 IT IS ORDERED that the defendant's motion to dismiss, Filing No. 9, is granted, and the complaint will be dismissed without prejudice.  The defendant's motion for Rule 11 sanctions, Filing No. 20, is denied.  A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 11th day of October, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.